# In the United States Court of Federal Claims

No. 19-110T
Filed: March 24, 2020

| |
|---|
| **THOMAS A. FORREST and JAMIE W. FORREST,** <br><br> *Plaintiffs*, <br><br> v. <br><br> **UNITED STATES,** <br><br> *Defendant*. |

*Thomas A. Forrest* and *Jamie W. Forrest*, *pro se*, for Plaintiffs.

*Jennifer Spriggs*, Trial Attorney, Court of Federal Claims Section, Tax Division, with whom were *G. Robson Stewart*, *David Pincus*, and *Richard Zuckerman*, U.S. Department of Justice, Washington, D.C., for Defendant.

**MEMORANDUM OPINION**

**TAPP, Judge.**

In this tax refund suit, Plaintiffs, Thomas A. and Jamie W. Forrest (collectively, the "Forrests"), allege that Mr. Forrest's separation pay, which he received after retiring from active duty service in the United States Navy (the "Navy"), was taxed twice: once in 1997 after Mr. Forrest separated from active duty, and again in 2016 after Mr. Forrest separated from the Navy Reserves. (*See* Compl. at 1). The Forrests seek a refund of $12,838.00. (Compl. at 4). On October 3, 2019, the United States filed a Motion to Dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1). (Def.'s Mot., ECF No. 13). On December 13, 2019, the Forrests, proceeding *pro se*, filed their response. (Pls.' Resp., ECF No. 19). On January 30, 2020, the United States filed its reply. (Def.'s Reply, ECF No. 23). This matter is now fully briefed and ripe for decision. For the reasons set forth below, the Court **GRANTS** the United States' motion to dismiss.

**I.  Background**

The facts are undisputed. Mr. Forrest separated from active duty service in the Navy on February 28, 1997. (Compl., Ex. 2-1).[1] Upon discharge, Mr. Forrest received $45,877.00 in gross separation pay, which was taxed at a rate of 28%, resulting in a withholding of $12,845.57.

---

[1] For clarity, citations to the Exhibits are referenced as they appear at the bottom of each original Exhibit rather than sequentially as they are numbered at the top of Exhibit.

(Compl., Exs., 2-1, 3, 12-1; Def.'s Mot., Ex. 1). Accordingly, Mr. Forrest's net separation payment totaled $33,031.46. (Compl., Ex. 12-1).

On March 1, 1997, the day after Mr. Forrest separated from the Navy, Mr. Forrest joined the U.S. Navy Reserves (the "Reserves"). (Compl., Ex. 2-1). On July 3, 1997, the U.S. Department of Veterans Affairs ("DVA") informed Mr. Forrest that it had approved his claim for service-connected disability. (*Id.*). As compensation, the DVA awarded disability pay of $179.00 monthly, retroactive to April 1, 1997. (*Id.*, Ex. 4-1). The DVA also informed Mr. Forrest that since he had received separation pay, his disability benefits would be withheld "until the full amount of your net separation pay has been recovered." (*Id.*, Ex. 4-2).

The Forrests timely filed their 1997 tax returns. (*Id.*, Exs. 2-1, 5-1). The Defense Finance and Accounting Service ("DFAS") issued a Form W2-C to Mr. Forrest for the 1997 tax year, reporting an increase in compensation in the amount of $45,877.02 arising from his receipt of separation pay. (Compl. Ex. 5-1). DFAS also reported withholding $12,845.57 in federal income tax from the gross amount of separation pay. (*Id.*). The Forrests' 1997 tax return reported total tax payments of $22,740.45 and tax liability of $20,972.95, and consequently, entitlement to a refund of $1,767.50 for the overpayment. (*Id.*, Exs. 5-1, 5-2).

On April 30, 2015, Mr. Forrest retired from active duty with the U.S. Navy (Reserves) and began receiving retirement pay. (*Id.*, Ex. 2-1). By correspondence dated January 6, 2016, DFAS notified Mr. Forrest of its intent to recoup from his retirement payments sums received "as a result of your previous separation from active duty." (*Id.*, Exs. 2-1, 7-1). The letter further explained that federal law "prohibits military members from receiving both [separation payments] and Retired Pay for the same period of service…." (*Id.*, Ex. 7-1).

The same day, DFAS sent a letter to the DVA on behalf of Mr. Forrest, which (1) informed the DVA of the monthly recoupment deductions that would be withheld from Mr. Forrest's retirement payment, and (2) requested an audit of any funds withheld from Mr. Forrest's disability compensation. (*Id.*, Exs. 2-1, 8-1). In a letter dated March 23, 2016, DFAS informed Mr. Forrest that the audit determined $22,334.53 had been withheld for recoupment and that Mr. Forrest still owed $23,542.47 of the $45,877.01 total gross separation payment he received in 1997. (*Id.*, Exs. 2-1; 9-1; 10-1).

On May 20, 2016, the Forrests filed a Form 1040X with the Internal Revenue Service ("IRS") seeking to amend their 1997 tax return to exclude from their reported gross income the separation payment of $45,877.02.[2] On January 31, 2017, the IRS denied the Forrests' refund claim. (*Id.*, Exs. 2-2, 19-1). This action followed.

---

[2] The Forrests' 1040X does not appear in the record. It is, however, referenced in correspondence received form the IRS. (Compl., Exs. 14-1, 18-1). Correspondence from Mr. Forrest to the IRS also establishes that the Forrests filed the 1040X. (*Id.*, Ex. 15-1).

## II. Standard of Review

The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998)). When faced with a motion to dismiss, pursuant to RCFC 12(b)(1), the court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

A *pro se* plaintiff's pleadings are generally held to "less stringent standards" than those of a professional lawyer. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, the Court cannot extend this leniency to relieve plaintiffs of their jurisdictional burden. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). Whether a court has jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "If the Court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

## III. Analysis

This Court's jurisdiction is delimited by the Tucker Act, 28 U.S.C. § 1491. The Tucker Act limits this Court's jurisdiction to suits "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon and express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Generally, "[a] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1) and *EC Term of Years Trust v. United States*, 550 U.S. 429 (2007)).[3] Tax refund suits are subject to compliance with the provisions of the Internal Revenue Code, including time limitations. *Clintwood Elkhorn Mining Co.*, 553 U.S. at 4 (citations omitted).

Among other requirements, the Internal Revenue Code requires that claims for tax refunds must first be filed with the Secretary of the Treasury. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("[I]n the context of tax refund suits, the [Supreme] Court

---

[3] Section 1346 of Title 28 of the United States Code provides:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: (1) [a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws....

has held that the Court of Federal Claims' Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)"). Indeed, under § 7422(a):

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). The Internal Revenue Code also imposes time limitations. Specifically, section 6511(a) provides, in relevant part, that:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later….

26 U.S.C. § 6511(a). Moreover, "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' . . . may not be maintained in any court." *United States v. Dalm*, 494 U.S. 596, 602 (1990). Against this backdrop, the Court weighs the Forrests' claim for a tax refund.

### *a. The Statute of Limitations*

The Forrests paid income taxes on the entire amount of gross separation pay received in 1997 and, after the DVA awarded Mr. Forrest disability benefits, the DVA began efforts to recoup the net amount of that separation pay. Then, beginning in 2016, the United States again sought to recapture the previously unpaid amount of the gross separation pay award. The result of this eighteen-year episode is that the Forrests must now continue to repay the gross amount of separation pay received in 1997, despite having already paid income taxes on that sum.

The undisputed facts establish that the Forrests first sought a refund from the IRS on May 20, 2016—approximately nineteen years after their 1997 return was due on April 15, 1998. In 2017, the IRS denied Plaintiffs' refund request, noting that it was filed more than three years after the tax return due date in 1998. A timely filing is a prerequisite for the United States Court of Federal Claims to have jurisdiction for a refund claim. *Commissioner v. Lundy*, 516 U.S. 235, 240 (1996). Accordingly, dismissal is required pursuant to RCFC 12(b)(1).

The Forrests argue that they could not have filed their claim within the three years, as required by § 6511, because they were unaware of the requirement imposed by 10 U.S.C. § 1174 regarding recoupment of separation pay. (Pls.' Resp. at 6). That section provides, in relevant part:

> A member who has received separation pay under this section, or separation pay, severance pay, or readjustment pay under any other provision of law, based on service in the armed forces, and who later qualifies for retired or retainer pay under this title or title 14 shall have deducted from each payment of such retired or retainer pay an amount, in such schedule of monthly installments as the Secretary of Defense shall specify, taking into account the financial ability of the member to pay and avoiding the imposition of undue financial hardship on the member and member's dependents, until the total amount deducted is equal to the total amount of separation pay, severance pay, and readjustment pay so paid.

10 U.S.C. § 1174(h)(1). The Forrests' unawareness of the impact of this statute does not render it invalid. Mr. Forrest received separation pay and then later begin receiving retirement pay. Section 1174 required that the United States deduct from his retirement pay such sums "equal to the total amount of separation pay… ." § 1174(h)(1).

Subsection (h)(2) of § 1174 also provides no relief. That section provides, in relevant part:

> A member who has received separation pay under this section, or severance pay or readjustment pay under any other provision of law, based on service in the armed forces shall not be deprived, by reason of his receipt of such separation pay, severance pay, or readjustment pay, of any disability compensation to which he is entitled under the laws administered by the Department of Veterans Affairs, but there shall be deducted from that disability compensation an amount equal to the total amount of separation pay, severance pay, and readjustment pay received, less the amount of Federal income tax withheld from such pay….

10 U.S.C. § 1174(h)(2). This section only provides relief in circumstances where disability compensation is being reduced to recover prior separation pay. Here, it is Mr. Forrest's separation pay that is the subject of the United States' recoupment efforts. Had the Forrests desired to recover taxes paid in 1997 on Mr. Forrest's separation pay, they should have done so contemporaneously, *i.e.*, within three years of filing their 1997 return.[4]

### b. Mitigation and Tolling

Nor is the Court convinced that any of the remaining claims presented by the Forrests run counter to the IRS determination. To the extent that the Forrests suggest that the 26 U.S.C.

---

[4] The Forrests also contend that a "conflict" exists between the limitations period imposed by 26 U.S.C.§ 6511 and 10 U.S.C. § 1174. (*See* Pls.' Resp. at 4, 6–14). No such conflict exists. Only § 6511(a) provides for a limitation period.

§ 6511 limitations period might be tolled for policy reasons or by application of other statutory provisions, the Court respectfully disagrees.[5]

The Forrests contend that the provisions of 26 U.S.C. §§ 1311–1314 apply. (*See* Pls.' Resp. at 14–15). "These provisions, in specified circumstances, 'permit a taxpayer who has been required to pay inconsistent taxes to seek a refund of a tax the recovery of which is otherwise barred by [I.R.C.] … 6511(a).'" *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (quoting *Dalm*, 494 U.S. at 610). The *Stephens* court explained the purpose and limits of §§ 1311–1314:

> In general, mitigation allows a taxpayer or the IRS to "correct errors otherwise barred by the statute of limitations" when all requirements in the mitigation provisions are met. The primary purpose of the mitigation provisions is to prevent the inconsistent treatment of items that result in a windfall to either the taxpayer or the Service. However, Congress did not intend by [the mitigation provisions] to provide relief for inequities in all situations in which just claims are precluded by statutes of limitations.

884 F.3d at 1158 (citations and internal quotations omitted); *see also Allred v. United States*, 689 Fed. Appx. 392, 397 (6th Cir. 2017) (Noting that though mitigation provisions are meant to allay effects of "unfair results" which may result in connection with tax refunds, "Congress did not intend by [the provisions] to provide relief in all situations in which just claims are precluded by statutes of limitations.") (quoting *Olin Mathieson Chemical Corp. v. United States*, 265 F.2d 293, 296 (7th Cir. 1959)). This may well be one of the situations in which a just claim is nevertheless barred.

Mitigation is permitted only when three requirements are met: (1) there must be a determination of tax liability as defined in § 1313(a)(1)–(4); (2) the determination must fall within a final disposition by the Secretary on a disallowed refund claim except where a suit has been filed before expiration of the time for instituting a suit under § 1313(a)(2); and (3) depending on which circumstance of adjustment is found, either an inconsistent position must be maintained by the party against whom mitigation will operate under § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position under § 1311(b)(2). *Stephens*, 884 F.3d at 1157 (quoting *Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir. 1987)). The Forrests have not satisfied any of these elements.

---

[5] The Forrests concede that exceptions contained within 26 U.S.C. § 6511 are not met. (Pls.' Resp., at 12). The Court agrees. Section 6511(d)(6) applies to certain ERISA related claims. Section 6511(d)(8) concerns those circumstances when retirement pay is reduced as a result of disability award.

There are only four types of "determinations" that can satisfy the first requirement for mitigation.[6] *Id.* Of those four, only one—a final disposition by the IRS on a disallowed refund claim—even remotely applies. The IRS's May 26, 2017 letter, however, cannot be a "final determination" because "such a determination could only come at the end of the instant litigation, which was initiated to challenge the IRS's decision." *Stephens*, 884 F.3d at 1159.

Even if the Forrests had met the first requirement of mitigation, which they have not, they do not satisfy any of the seven "circumstances of adjustment" described in § 1312(1)–(7). While the Forrests suggest that § 1312(1) (double inclusion of an item of gross income) and § 1312(4) (double disallowance of a deduction or credit) apply, neither section affords the Forrests a basis for relief. The former provision, § 1312(1), does not apply because the Forrests cannot show that they erroneously included as gross income the separation payment received in the 1997 tax year. The latter provision, § 1312(4), is expressly limited by § 1311(b)(2)(b), which provides that determinations relating to disallowances or credits are not available if the refund was barred by any law at the time the taxpayer first claimed entitlement to the refund before the Tax Court or the IRS. 26 U.S.C. § 1311(b)(2)(B). Since the Forrests' tax refund claim was first presented in 2016, it was already barred by the limitations period of § 6511. *See Stephens*, 884 F.3d at 1160. For these reasons, the mitigation provisions of 26 U.S.C. §§ 1311–1314 do not apply.

Finally, the Forrests argue that had Congress been aware of the "consequential impact on the thousands of retired veterans who are unable to obtain a legitimate refund claim," it may have created a saving exception to § 6511. (Pls.' Resp. at 11). However, this matter is not within the limited purview of the Court. *See Rotiske v. Klemm*, 140 S.Ct. 355, 360–61 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'") (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)). "To supply omissions transcends the judicial function," as this would be "not a construction of a statute, but, in effect, an enlargement of it by the court." *Nichols v. United States*, 136 S.Ct. 1113, 1119 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

Statutes of limitations "must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947); *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–35 (2008). The limitations period for filing tax refund claims established in § 6511 is not subject to equitable tolling, *United States v. Brockamp*, 519 U.S. 347, 354 (1997), and the Court cannot use whatever limited equity powers it possesses to rewrite a statutory scheme to award relief to which Congress has not assented. Thus, while the Court is sympathetic to the Forrests' situation, the United States' motion to dismiss must be granted.

---

[6] These "determinations" are: (1) a final decision by a court of competent jurisdiction; (2) a closing agreement under I.R.C. § 7121; (3) a final administrative ruling on a refund claim (unless suit is timely instituted on the claim); and (4) a mitigation agreement between the IRS and the taxpayers. *Stephens*, 884 F.3d at 1157.

### IV. Conclusion

Because the Forrests' claim for a tax refund arising from tax year 1997 is time-barred, this Court lacks subject matter jurisdiction to hear the Forrests' claim. Therefore, the Court hereby **GRANTS** the United States' motion to dismiss pursuant to RCFC 12(b)(1).

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

*David A. Tapp*
DAVID A. TAPP, Judge
